IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2020

**KEVIN TAYLOR v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 15-01855      Carolyn Wade Blackett, Judge**

_____

**No. W2019-01492-CCA-R3-PC**

_____

In 2016, the Petitioner, Kevin Taylor, entered *Alford* pleas to three counts of aggravated robbery and one count of being a felon in possession of a firearm. The trial court sentenced him to an effective eight-year sentence. The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel, which the post-conviction court denied after a hearing. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

James Jones, Jr., Bartlett, Tennessee, for the appellant, Kevin Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; Sarah M. Poe and Paul F. Goodman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

This case originates from the Petitioner's and a minor co-defendant's involvement with an aggravated robbery of three victims in Memphis. The Petitioner was indicted for three counts of aggravated robbery and one count of being a felon in possession of a firearm.

**A. *Alford* Pleas**

The plea transcript is not included in the appellate record.[1]  However, included as an exhibit to the appellate record is an order from the Juvenile Court for Memphis and Shelby County pertaining to the case against the Petitioner's minor co-defendant.  The order includes the following recitation of facts in support of the minor co-defendant's admission to his involvement in the robbery:

> On January 14, 2015, officers responded to a robbery of a business at 3141 New Horn Lake Rd.  Upon arrival, officers spoke with victims Marco Irby and Jerrick Hurd and they advised them that two young black males entered the business, one wearing a white hoodie and the other wearing a dark blue hoodie.  Both suspects were armed with handguns and both suspects demanded money and property from both victims and another victim, Chivell Franklin.  The suspects fired one shot and then fled the scene with the victims' property westbound into a gated field.  Victim Chivell Franklin followed both suspects from the scene and was able to point out the location of the suspects to the responding officers.  Officers in the area located both suspects, matching the description given by the victim, hiding underneath a small fishing boat.  As officers approached, they observed both suspects throwing handguns away from their person.  Officers were able to take both suspects into custody and located the victims' cell phones, victim Jerrick Hurd's handgun, and $116.00 cash.

Based on these facts, the Petitioner entered pleas pursuant to *Alford v. North Carolina*, 400 U.S. 25, 31 (1970).  He entered the *Alford* pleas to all four of the indicted charges and the trial court ordered him to serve concurrent eight-year sentences for each, which, by agreement with the State and U.S. Attorney, were to be served concurrently with his federal sentence in another case.

## B. Post-Conviction Proceedings

The Petitioner filed a *pro se* petition for post-conviction relief, which appointed counsel later amended, alleging that he had received the ineffective assistance of counsel.  The following evidence was presented at a hearing on the petition:  Counsel testified that he represented the Petitioner at the trial level.  The Petitioner asked Counsel to make contact with the minor co-defendant, who was no longer in custody, and Counsel attempted to make contact.  The minor co-defendant indicated to Counsel that he did not want to speak with him.  Counsel testified that he encouraged the Petitioner to "seek a disposition" of his charges because the evidence presented at the preliminary hearing was

---

[1] At the start of his post-conviction hearing, the Petitioner requested a transcript of the guilty plea hearing, to be paid for by the State.  The post-conviction court denied this request, stating that there was no material reason to order a transcript of the guilty plea hearing.

not helpful to the Petitioner. The victims were very involved in the case and present at the preliminary hearing. The evidence presented was uncontroverted that two males entered the business and robbed the victims at gunpoint; the victims then coordinated with the police and followed the perpetrators until they were caught close to the scene of the crime hiding under a boat.

Counsel testified that there were no facts to mitigate the case against the Petitioner and that the evidence was essentially uncontroverted with no issue related to identification of the Petitioner. The trial judge had asked that, based on the nature of the evidence against the Petitioner, he accept a guilty plea prior to trial or not at all. Counsel met with the Petitioner to discuss disposition of the case and encouraged him to "settle." Counsel stated that the Petitioner was angry at him and at the victims' statements, which he felt mischaracterized his role in the events versus his co-defendant's role. The Petitioner wanted to "distinguish" his actions from his co-defendant's, which Counsel explained was not feasible because the crime was a "concerted effort." Counsel attempted to contact the co-defendant again, but the co-defendant's guardian refused to allow Counsel to speak with the minor.

The Petitioner later called Counsel and stated his desire to plead guilty. Counsel visited the Petitioner to discuss the decision, and they spoke at length. The Petitioner felt that his minor co-defendant's testimony was critical to his case; Counsel recalled that he was unable to obtain an address for the co-defendant in order to issue a subpoena. Counsel felt that the minor co-defendant's testimony would have been rejected by a jury, based on the Petitioner's role in the crime.

Counsel testified that the Petitioner wished to enter a plea pursuant to *North Carolina v. Alford*, wherein the Petitioner accepted the ramifications of the crime but disputed his level of involvement.

On cross-examination, Counsel testified that the Petitioner decided to plead guilty a week or two prior to his trial date. Counsel stated that the victims had been clear that both the Petitioner and the minor co-defendant had acted in concert with the intent to steal property at gunpoint from the victims. About his entry of a guilty plea, Counsel reviewed the ramifications with the Petitioner and coordinated with the Federal Public Defender assigned to the Petitioner's federal case to ask the U.S. Attorney to agree to the Petitioner's sentences running concurrently to his federal sentence.

The Petitioner testified that he was ready to go to trial and felt prepared for the same but ultimately decided to plead guilty based on his exposure to a twelve-year sentence for each of his robbery convictions resulting in a possible thirty-six-year sentence. Regarding his co-defendant, the Petitioner asked Counsel to investigate his

case, but he never received any information from Counsel. Following the entry of his plea, the Petitioner learned that his co-defendant had pleaded guilty to this offense almost two years before the Petitioner. This, the Petitioner testified, would have changed his decision about whether or not to proceed to trial because it might have prompted the State to make a different offer to the Petitioner. Apart from not knowing about the minor co-defendant's guilty plea, the Petitioner had no other complaints about Counsel's representation of him.

Upon questioning by the trial court, the Petitioner stated that he understood the ramifications of being granted post-conviction relief, which could result in a new trial with the potential loss of the benefit of concurrent sentencing with his federal sentences, which he had received as part of his plea deal. The Petitioner indicated that he wished to proceed with post-conviction proceedings in spite of this.

The Petitioner testified that he was currently serving a federal sentence of ten years to be served at eighty-five percent. This meant that his sentence in this case was "effectively swallowed up" by his federal sentence. The Petitioner stated that, at the guilty plea submission hearing, Counsel told him to say that the Petitioner was satisfied with Counsel's representation. He agreed that Counsel explained to him what an *Alford* plea was and that the same would serve the Petitioner's best interest.

On cross-examination, the Petitioner agreed that his guilty plea was entered voluntarily, and that he was not threatened or forced to enter it. He stated that he was satisfied with Counsel "at the time."

On redirect-examination, the Petitioner reiterated that he learned after the entry of his plea that his juvenile co-defendant had entered a plea two years before the Petitioner. He agreed that he and his family, as well as post-conviction counsel, had all tried to locate the co-defendant without success.

As relevant to the Petitioner's issues on appeal, the post-conviction court's order states:

> [The] Petitioner alleges that [Counsel] was ineffective in his representation because [Counsel] failed to inform [the] Petitioner that his co-defendant had plead guilty. However, in failing to inform [the] Petitioner that his co-defendant had plead guilty, [Counsel] did not fall below his duty as an attorney. [Counsel] did not know that [the] Petitioner's co-defendant had plead guilty, so [Counsel] could not relay this information to [the] Petitioner. [Counsel] did not look into the co-defendant's case because [Counsel] felt that the case had no bearing on [the] Petitioner's case because they were separate, and the co-defendant's

4

case was in juvenile court. Additionally, information from the co-defendant's case would not have provided any mitigating information and was not beneficial to the Petitioner. [Counsel] made an informed decision not to use information from the co-defendant's case. As such, [Counsel] provided effective assistance of counsel.

Nonetheless, [the] Petitioner claims that had he known about his co-defendant's guilty plea he would have reconsidered his decision to plead guilty. However, at the post-conviction hearing, [the] Petitioner did not state that he would not have plead guilty as required under Tennessee Law. *See Cooper*, 2001 Tenn. Crim. App. LEXIS 843, at 13. Instead, [the P]etitioner stated that he would have used this information to try to get a better deal from the [S]tate. Despite what [the] Petitioner may believe, it is unlikely that the [S]tate would have offered [the] Petitioner a better deal as a result of the co-defendant's admission of guilt. The [S]tate had offered [the] Petitioner eight years for three counts of aggravated robbery and were going to allow him to make an *Alford* plea, which was a best interest plea. [The] Petitioner was facing between eight and twelve years for each count. Since the crimes were violent, [the] Petitioner could have been sentenced to serve the time consecutively, meaning that [the] Petitioner was facing a maximum of thirty-six years. Additionally, there were witnesses available who were willing to testify about the Petitioner's involvement in the crime. There was no issue of identification nor was there mitigating evidence for the Petitioner. Knowing this, it is unlikely that the [S]tate would have reduce the time it offered to [the] Petitioner. It is more likely that the [S]tate would have revoked the offer of eight years and increased the time it offered because the co-defendant's admission of guilt goes towards the guilt of the Petitioner since they committed the crime together. It is doubtful that the co-defendant's admission of guilt would have helped [the] Petitioner, as such, it is also unlikely that knowing this information would have caused the Petitioner not to plead guilty.

Nevertheless, even if [the] Petitioner would have chosen not to plead guilty as a result of this information, not knowing this information did not prejudice [the] Petitioner. As stated earlier, [the] Petitioner was facing a maximum of thirty-six years, there were witnesses willing to testify against [the] Petitioner, and there was no mitigating evidence available to [the] Petitioner. If [the] Petitioner had chosen not to plead guilty as a result of his co-defendant's admission of guilt, it is more likely than not that [the] Petitioner would be in a worse off position than he is in now. The co-defendant's admission of guilt would not have helped [the P]etitioner in

5

any way.  As such, not having that information did not prejudice the [Petitioner].  For the reasons stated above, the Petitioner has not met his burden of proof for ineffective assistance of counsel and is denied relief on this basis.

2. [The] Petitioner was not denied his right to a fair trial.

. . . .  At the post-conviction hearing, [the] Petitioner stated: that he understood what an *Alford* plea was, and that [Counsel] had explained the consequences of accepting the plea deal.  [The] Petitioner weighed his options and determined that it was in his best interest to take the plea deal because if he went to trial and lost, he would be facing more time.  When accepting the guilty plea, the trial court went through all the proper channels and asked whether [the] Petitioner understood the consequences of the plea, and whether it was being made voluntarily and was not coerced.  [The] Petitioner stated that he was making the plea voluntarily and that he "wasn't threatened or forced or anything."  Finding that the Petitioner made his *Alford* plea knowingly, voluntarily, and intelligently, [the] Petitioner waived his right to a jury trial and was not denied his right.  Accordingly, [the] Petitioner is denied relief on this basis.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel was ineffective for failing to disclose the disposition of the co-defendant's case to the Petitioner, which would have influenced the Petitioner's decision to plead guilty.  He contends further ineffectiveness on account of Counsel "misinforming" the Defendant as to the finality of his case upon entry of his *Alford* plea, claiming that Counsel misinformed the Petitioner that he could "fight the charges" despite the plea.  The State responds that the Petitioner's claims are without merit in light of his testimony at the post-conviction hearing.  We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right.  T.C.A. § 40-30-103 (2018).  The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence.  T.C.A. § 40-30-110(f) (2018).  The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it.  *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).  Upon review, this Court will not re-weigh or re-evaluate the

6

evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6

S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994*)*. In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The post-conviction court found that the Petitioner had not proven his allegation that Counsel's failure to notify him of his co-defendant's guilty plea was deficient because Counsel did not have that information at the time of the Defendant's guilty plea. Furthermore, the post-conviction court found that the Petitioner's testimony that, if he had been given this information, it *might* have changed his decision to plead guilty, did not meet his burden of showing prejudice. The post-conviction court noted that, given the uncontroverted evidence of the Petitioner's involvement in the crimes, evidence of the co-defendant's entry of a guilty plea unlikely would have affected the State's offer to the Petitioner.

The evidence does not preponderate against the post-conviction court's findings. The evidence was that Counsel attempted to contact the co-defendant at least twice, also by way of the co-defendant's guardian, who refused Counsel's communication with the

minor co-defendant. The evidence presented was that Counsel intended to issue a subpoena for the minor co-defendant but was unable to obtain an address. The co-defendant's status as a minor meant his identity was protected and, as his case was adjudicated in juvenile court, the outcome of the case was potentially sealed or kept from public view. In light of this, Counsel's attempts to make contact with the minor co-defendant or his relatives was representation that we conclude fell within the wide range of "reasonable professional assistance," *Burns*, 6 S.W.3d at 462, and this court will not conclude, in hindsight, that more should have been done. This is particularly true in the light of the evidence against the Petitioner, which, as noted by the post-conviction court, was uncontroverted, and thus, any information the co-defendant could have provided would likely have been inconsequential, if not harmful, to the Petitioner's case. Indeed, the victims of the Petitioner's crimes, who Counsel testified were active in the prosecution, followed the Petitioner and the co-defendant from the scene and tracked them for the police; the victims later discovered the Petitioner and the co-defendant hiding from the police and identified them as the perpetrators.

Furthermore, the Petitioner testified that the information about the minor co-defendant's case might have led him to make a different decision about pleading guilty. This is insufficient to establish his burden that but for Counsel's actions, he would have insisted on going to trial. *See Hill*, 474 U.S. at 59. As such, we conclude that the evidence does not preponderate against the post-conviction court's conclusion that information about the co-defendant's guilty plea would have affected the State's position or the disposition of the Petitioner's case. Counsel's representation was thorough and effective, and, therefore, the Petitioner is not entitled to relief.

As to the Petitioner's contention that Counsel "misinformed" him about the implications of his best interest plea, the post-conviction court concluded that the Petitioner had knowingly entered this plea, after a full hearing conducted by the trial court, during which the Petitioner was asked about the consequences of entering a best interest plea and he informed the trial court that he understood what it meant to enter such a plea. The evidence does not preponderate against this finding. Counsel testified that he discussed with the Petitioner "at length" his decision to enter this plea. Counsel testified that the Petitioner felt strongly about delineating his actions from his minor co-defendant's, which he felt were not as serious as the co-defendant's. After Counsel explained that their acting in concert meant he shared equal culpability, Counsel informed the Petitioner of his option to "accept responsibility" for the crime but contest the facts by way of entering an *Alford* plea, which the Petitioner opted to do. The Petitioner has not presented any evidence of what "misinformation" was provided to him by Counsel; indeed all the evidence presented on this issue showed that Counsel provided the Petitioner with effective representation. The Petitioner is not entitled to relief.

9

## III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the petition for post-conviction relief. We affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE